F I L E D

United States Court of Appeals
Tenth Circuit

JUN 4 2004

PATRICK FISHER
Clerk

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TILMAN EUGENE HAMMONDS,

Defendant - Appellant.

No. 03-7081

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. NO. 99-CR-21-P)**

Roger Hilfiger, Muskogee, Oklahoma, for Defendant - Appellant.

D. Michael Littlefield, Assistant United States Attorney (Sheldon J. Sperling, United States Attorney, with him on the brief), Muskogee, Oklahoma, for Plaintiff - Appellee.

Before **BRISCOE**, **ANDERSON**, and **LUCERO**, Circuit Judges.

**ANDERSON**, Circuit Judge.

The issue before us in this case is whether the district court erred in

revoking the defendant-appellant's term of supervised release under 18 U.S.C.

§ 3583(g)(1), which mandates revocation for "possession" of a controlled substance, based on a single positive urinalysis result. For the reasons set forth below, we affirm the district court's revocation order.

## BACKGROUND

On March 23, 1999, Tilman Eugene Hammonds pled guilty to a charge of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and was sentenced, on July 13, 1999, to seventy months' imprisonment, followed by three years of supervised release. The sentencing court recommended "[t]hat defendant be given the opportunity to participate in an intensive substance abuse treatment program [in prison]." R. Vol. I, tab 11 at 2. The court also imposed the following conditions on Hammonds' supervised release, as required under 18 U.S.C. § 3583(d):

> The defendant shall not illegally possess a controlled substance.
> . . . .
> The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

Id. at 3. Due to his cooperation in another case, Hammonds' term of imprisonment was subsequently reduced to forty-six months. His term of supervised release began on May 1, 2002.

On May 28, 2003, Hammonds submitted a urine sample that tested positive for amphetamine, methamphetamine, and d-methamphetamine. The test results were reported on June 9, 2003. On June 17, 2003, Hammonds' probation officer submitted a petition to the district court recommending revocation of Hammonds' term of supervised release based on this positive urinalysis result.

The court held a final revocation hearing on July 15, 2003. At the hearing, both parties stipulated to the May 28 positive urinalysis result and the fact that this was the only positive result during Hammonds' supervised release to date. Hammonds presented his probation officer as a witness. The probation officer testified that, due to Hammonds' participation as a witness in state prosecutions, Hammonds had changed prisons several times and had at one point been put in protective segregation. The officer further testified that Hammonds had not participated in a drug treatment program until the final six months of his incarceration, after he moved into a halfway house.

On the basis of this testimony, Hammonds urged the court not to revoke his term of supervised release but instead to order him to enroll in a drug treatment program. However, the government argued for revocation, stating that "as to this defendant, he has had some drug treatment already and has failed, even following that treatment, to comply with the rules and conditions of probation regarding illegal drug use." Hr'g Tr. at 10, R. Vol. II.

The district court made a finding, by a preponderance of the evidence, that, based on Hammonds' May 28 positive urinalysis, Hammonds violated the mandatory condition of his supervised release prohibiting him from illegally possessing a controlled substance. The court thereupon revoked Hammonds' term of supervised release and sentenced Hammonds to twenty-four months' imprisonment. The court also recommended "[t]hat the defendant be given the opportunity to participate in an intensive substance abuse treatment program." R. Vol. I, tab 23 at 2.

Hammonds brought this appeal, arguing that the district court misapplied the mandatory revocation requirements of 18 U.S.C. § 3583(g) in light of Congress's 2002 amendments to the statute. We review orders revoking supervised release for an abuse of discretion. United States v. McAfee, 998 F.2d 835, 837 (10th Cir. 1993). "[H]owever, we review *de novo* legal questions relating to the applicability of 18 U.S.C. § 3583(g)." Id.

**DISCUSSION**

We understand Hammonds' arguments on appeal to be, in essence, twofold. First, Hammonds argues Congress's 2002 addition of subsection (g)(4) to 18 U.S.C. § 3583 requires us to reconsider our prior holding in United States v. Rockwell, 984 F.2d 1112 (10th Cir. 1993), overruled on other grounds by Johnson

v. United States, 529 U.S. 694 (2000), concerning the relationship between drug

use and drug possession in the revocation context.  Second, Hammonds argues the

district court erred by not granting him, pursuant to 18 U.S.C. § 3583(d), an

exception to subsection (g)'s mandatory revocation requirement.  We address each

of these arguments in turn.

## A.

Hammonds' first argument focuses on 18 U.S.C. § 3583(g), which currently

states, in relevant part:

> **(g) Mandatory revocation for possession of controlled substance
> . . . or for refusal to comply with drug testing.**—If the
> defendant—
>> (1) possesses a controlled substance in violation
>> of the condition set forth in subsection (d);[1]
>> . . . .
>> (3) refuses to comply with drug testing imposed as
>> a condition of supervised release; or
>> (4) as a part of drug testing, tests positive for
>> illegal controlled substances more than 3 times over the
>> course of 1 year;
> the court shall revoke the term of supervised release and require the
> defendant to serve a term of imprisonment not to exceed the
> maximum term of imprisonment authorized under subsection (e)(3).

---

[1]As indicated above, subsection (d) states that "[t]he court shall order, as an explicit condition of supervised release, . . . that the defendant not unlawfully possess a controlled substance."  18 U.S.C. § 3583(d).

18 U.S.C. § 3583(g). Hammonds' term of supervised release was revoked under subsection (g)(1), after the district court found, based on a positive urinalysis result, that Hammonds possessed a controlled substance. Hammonds argues here that applying subsection (g)(1) based on a single positive drug test renders subsection (g)(4), which was added in 2002 and requires revocation after more than three positive tests in one year, meaningless and that the district court therefore erred. In short, Hammonds asserts that a positive drug test indicates drug use, not drug possession, and that the 2002 amendment indicates that Congress did not intend for courts to find possession based on use.

As Hammonds recognizes, we previously considered the argument that a positive drug test indicates only use, not possession, in our 1993 decision in Rockwell, 984 F.2d at 1115. There, we "h[e]ld that a controlled substance in a person's body is in the possession of that person for purposes of 18 U.S.C. § 3583(g), assuming the required *mens rea*." Id. at 1114. We concluded that one instance of knowing and voluntary use, based on a single failed drug test together with the defendant's admission, constituted possession for purposes of § 3583(g). Id. at 1115 n.4.

As we later explained, our holding in Rockwell was based on "the unremarkable observation that a person cannot use a drug without possessing it." United States v. McAfee, 998 F.2d 835, 837 (10th Cir. 1993). This holding is in

accord with the prevailing view among circuits that have considered the issue.

See United States v. Wirth, 250 F.3d 165, 170 (2d Cir. 2001) (holding that "use of

narcotics amounts to possession thereof for the purposes of § 3583(g)"); United

States v. Hancox, 49 F.3d 223, 225 (6th Cir. 1995) (agreeing that "'use' of

controlled substances constitutes 'possession' for purposes of 18 U.S.C. § 3583,"

and thus reversing the district court's decision not to revoke the defendant's term

of supervised release); United States v. Young, 41 F.3d 1184, 1186 (7th Cir.

1994) (holding that "in the revocation of supervision context, 'use' is subsumed

within 'possession' where the defendant knowingly and voluntarily consumes the

controlled substance"); United States v. Clark, 30 F.3d 23, 26 (4th Cir. 1994)

(holding that "once a district court credits laboratory analysis as establishing the

presence of a controlled substance in the specimen and then goes on to find

culpable use of the substance, possession under § 3583(g) necessarily follows"

(internal quotation marks omitted)); United States v. Courtney, 979 F.2d 45, 49

(5th Cir. 1992) (holding that "once the court finds a substance has been

voluntarily and knowingly ingested, then, at least in almost any imaginable

circumstance, it necessarily follows that the defendant has possessed the

substance").[2]

---

[2] Even those circuits that have not equated use and possession for purposes of § 3583(g) have concluded that a positive drug test is at least circumstantial

(continued...)

We continue to believe that, assuming the requisite culpable state of mind, the connection drawn in <u>Rockwell</u> between use and possession is simply a matter of common sense.  As the Seventh Circuit stated in a similar context, "[i]nferring possession of a drug from the consumption of that drug is just as sensible as inferring, from the statement 'I ate a hamburger for lunch,' that the person possessed the hamburger before wolfing it down."  <u>United States v. Trotter</u>, 270 F.3d 1150, 1153 (7th Cir. 2001).  Moreover, "[w]e are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court."  <u>In re Smith</u>, 10 F.3d 723, 724 (10th Cir. 1993) (citations omitted).

---

[2](...continued)
evidence of possession and that a district court therefore has discretion to make a finding of possession based on positive tests.  <u>See</u> <u>United States v. Pierce</u>, 132 F.3d 1207, 1208 (8th Cir. 1997) (holding that the district court had discretion whether to find possession based on a failed drug test); <u>United States v. Almand</u>, 992 F.2d 316, 318 (11th Cir. 1993) (upholding the district court's "exercise[] [of] its factfinding power" in finding possession based on four positive drug tests, while noting that "there is no indication that the district court believed it was required to equate use with possession"); <u>United States v. Dow</u>, 990 F.2d 22, 24 (1st Cir. 1993) (upholding the district court's finding of possession based on eleven positive drug tests); <u>United States v. Baclaan</u>, 948 F.2d 628, 630 (9th Cir. 1991) (upholding the district court's finding of possession based on four positive drug tests and the defendant's admission of use); <u>United States v. Blackston</u>, 940 F.2d 877, 891 (3d Cir. 1991) (holding that evidence of drug use could be considered circumstantial evidence of possession and upholding the district court's finding of possession based on three positive drug tests and the defendant's admission of use).

We must consider, however, whether, as Hammonds argues, Congress effectively superseded <u>Rockwell</u>'s holding, and the similar holdings of other circuits, through the addition of subsection (g)(4). Nothing in the language of the 2002 amendment explicitly indicates an intent to supersede <u>Rockwell</u>. We therefore consider whether such an intent is made manifest through the statute's structure – namely, whether, as Hammonds contends, subsection (g)(1), when applied in accord with <u>Rockwell</u>, swallows subsection (g)(4). The government argues against this contention on the basis that

> nowhere in [§] 3583(g)[(1)] is the finding of possession as [a] result of use required. As such, prior to the passage of [§] 3583(g)(4), a court could make multiple findings of use of a controlled substance without finding possession. This would allow the court to . . . modify conditions without requiring revocation and imprisonment. Section 3583(g)(4) merely limits the discretion of a court in that usage of a controlled substance in excess of three occasions during a calendar year, as evidenced by drug testing failures, mandates a revocation.

Appellee's Br. at 7. In other words, the government interprets subsection (g)(1) as giving the district court the flexibility to choose whether or not to make a finding of possession based on a finding of knowing and voluntary use. Under this view, subsection (g)(1) does not swallow subsection (g)(4) because revocation based on use, as evidenced by positive drug tests, is at the court's discretion under subsection (g)(1) and only becomes mandatory when there are four positive tests, triggering (g)(4).

In suggesting this interpretation, the government appears to adhere to the reasoning of the Third Circuit's opinion in Blackston, followed by the First, Eighth, Ninth, and Eleventh Circuits. Blackston regarded subsection (g)(1) as preserving a district court's flexibility in determining whether or not to revoke a defendant's term of supervised release based on failed drug tests. Blackston, 940 F.2d at 885 (explaining that Congress's "emphasis on flexibility," as revealed by legislative history, is consistent with the court's interpretation of § 3583(g)). Under the Blackston approach, a district court has "leeway under [§ ] 3583(g)," allowing, but not requiring, it to make a finding of unlawful drug possession based on "multiple positive drug tests and other circumstantial evidence such as admitted drug use." Id.

As our holding in Rockwell indicates, we do not believe that a court, presented with undisputed evidence of drug use, as shown by a positive drug test, together with evidence that the defendant's use was knowing and voluntary, can logically conclude that the defendant has not possessed the drug. As we stated explicitly in Rockwell, in the context of revocation proceedings based on positive drug tests, knowing and voluntary use is "synonymous with possession." Rockwell, 984 F.2d at 1114. We thus reject the government's analysis.

We nevertheless conclude that subsection (g)(1), when applied in accord with Rockwell, does not swallow subsection (g)(4). Subsection (g)(4) requires

revocation of a defendant's term of supervised release where the defendant tests positive for illegal controlled substances at least four times in one year, without regard to the defendant's mens rea. Thus, under subsection (g)(4), a defendant's term of supervised release would be subject to mandatory revocation even where the defendant could prove that all four positive tests were due to accidental or unwilling ingestion.[3] Subsection (g)(1), on the other hand, when applied under Rockwell, requires revocation only where the district court finds that the defendant had the required mens rea. We believe the mens rea requirement in subsection (g)(1), requiring the government to prove by a preponderance of the evidence that the defendant knowingly and voluntarily used the drug revealed by the drug test, sufficiently distinguishes it from subsection (g)(4) so that the latter provision may apply in circumstances where the former does not.[4]

---

[3]Such an occurrence is of course unlikely. Indeed, we understand subsection (g)(4) as indicating Congress's view that four positive tests in one year is sufficient evidence that a defendant's use was knowing and voluntary, making an independent mens rea finding unnecessary.

[4]Hammonds quotes a general statement by Senator Hatch, that the 2002 bill as a whole was primarily intended to advance drug treatment efforts, see 147 Cong. Rec. S1271-02, S1314 (daily ed. Feb. 13, 2001) (statement of Sen. Hatch), as indicating Congress's intent to supersede Rockwell by adding subsection (g)(4). We are unpersuaded by this argument. For one thing, as discussed below, the 1994 amendment to § 3583(d) already allowed a court to order enrollment in a drug treatment program instead of revocation under subsection (g). That amendment specifically referred to revocations under subsection (g) based on failed drug tests, indicating Congress was aware courts were making findings of "possession" based on such tests. Indeed, the 1994 amendment followed

(continued...)

-11-

We conclude that <u>Rockwell</u>'s holding remains valid.

**B.**

Hammonds' second argument is that the district court should have granted him an exception, pursuant to 18 U.S.C. § 3583(d), to the mandatory revocation requirement under 18 U.S.C. § 3583(g)(1). The relevant language in subsection (d) was added in 1994 and states:

> The court shall consider whether the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs, warrants an exception in accordance with United States Sentencing Commission guidelines from the rule of section 3583(g) when considering any action against a defendant who fails a drug test.

Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 20414(c), 108 Stat. 1796 (codified at 18 U.S.C. § 3583(d)). This addition thus requires a district court to consider whether to grant a defendant otherwise subject to mandatory revocation under subsection (g)(1)[5] an exception, presumably by

---

[4](...continued)
<u>Rockwell</u> and similar decisions of other circuits. If Congress had wished to clarify that it did not intend (g)(1) "possession" revocations to be predicated on failed drug tests, we believe it would have done so explicitly. The addition of subsection (g)(4) provides no such explicit clarification.

[5]Prior to the 2002 amendment of subsection (g), the reference in subsection (d) to § 3583(g) could only have referred to subsection (g)(1), as neither (g)(2) nor (g)(3) could conceivably apply based on a failed drug test. The reference in subsection (d) was not revised in 2002 to refer specifically to subsection (g)(1).

(continued...)

-12-

ordering the defendant to undergo or continue substance abuse treatment instead of revoking his term of supervised release.

In effect, the subsection (d) exception provides a court following <u>Rockwell</u> a degree of discretion similar to that exercised by a court following <u>Blackston</u> when determining whether to apply subsection (g)(1)'s mandatory revocation requirement based on a positive drug test. Under the subsection (d) exception, however, this discretion comes into play after a finding of possession is made, rather than at the point of making the finding.[6]

---

[5](...continued)
Thus, the exception provided in subsection (d) to mandatory revocation appears now to apply to revocations under either (g)(1) or (g)(4).

[6]We note that the Eighth Circuit agreed that the 1994 amendment "as a whole permits a sentencing court to choose whether to impose a program of treatment rather than incarceration if one on probation fails a drug test." <u>Pierce</u>, 132 F.3d at 1208. However, <u>Pierce</u> attempts to incorporate this interpretation of the 1994 amendment into the <u>Blackston</u> approach, stating: "If the court finds an offender to be in illegal possession of a controlled substance, imprisonment is mandated. If, however, the court simply finds that one on probation failed a drug test, then the court is free to require further participation in a substance-abuse program." <u>Id.</u> Under <u>Pierce</u>, then, as under <u>Blackston</u>, the district court exercises its flexibility at the point of making the finding of possession. However, we believe our interpretation is consistent with the amendment's clear statement that it is setting forth "an exception . . . from the rule of section 3583(g)." 18 U.S.C. § 3583(d). If the district court does not make the initial finding of possession, subsection (g)(1) would not be applicable, and the court would have no need to consider whether to grant an "exception" to the rule pursuant to subsection (d). This interpretation is also consistent with the relevant federal sentencing guidelines commentary. United States Sentencing Commission, <u>Guidelines Manual</u>, §7B1.4, comment. (nn.5-6).

Since the decision to apply the subsection (d) exception is at the discretion of the district court, we review this decision for an abuse of discretion. We first note that the district court here did not make a specific ruling on the record rejecting application of the subsection (d) exception in this case or explaining the reasons for such a rejection. This alone does not constitute an abuse of discretion, however, as there is no indication the court did not recognize that it could grant the exception. Compare United States v. Crace, 207 F.3d 833, 836 (6th Cir. 2000) ("[W]e do not require magic words in the record of the sentencing hearing indicating that substance abuse treatment was considered in order to uphold the district court's prison sentence."), with Pierce, 132 F.3d at 1208-09 (remanding where the district court's statements at the revocation hearing cast doubt on whether it realized it could order drug treatment as an alternative to revocation). As indicated above, Hammonds argued at his revocation hearing that the court should order drug treatment rather than revocation. Hammonds also presented the testimony of his probation officer in support of this argument. The government, however, argued against allowing this exception, pointing out that Hammonds had already participated in a treatment program before his positive urinalysis. Ultimately, the court ordered revocation but recommended Hammonds be put into a drug treatment program in prison. There is no indication the court did not recognize it had discretion to order enrollment in a substance abuse

program.  We hold that the court did not abuse its discretion by ordering revocation rather than an exception pursuant to 18 U.S.C. § 3583(d).

## CONCLUSION

For the foregoing reasons, the district court's order is AFFIRMED.